*95 ATTORNEY DISCIPLINARY PROCEEDINGS.
hPER CURIAM.*
This disciplinary matter stems from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Raphael P. Poirrier, an attorney licensed to practice law in Louisiana but who is currently ineligible to practice.[1]
UNDERLYING FACTS

Barbier Matter

On March 10, 1997, Donald Charles Barbier retained respondent to handle a community property matter for $550. Subsequently, respondent lost his client’s papers, neglected the legal matter, and failed to communicate with his client. Respondent closed his law practice and relocated to the State of Texas without notice to his client. He failed to return Mr. Barbier’s files, provide an accounting, or refund the unearned fees.
On June 30, 1998, Mr. Barbier filed a complaint with the ODC advising of respondent’s misconduct. A copy of the complaint forwarded to respondent at his address, as registered with the Louisiana State Bar Association, was returned 1 /‘unclaimed.” Subsequently, on August 11, 1998, respondent advised the ODC that he had moved to Texas and was no longer practicing in Louisiana. A copy of the complaint was delivered to respondent by hand at his new Katy, Texas address on *96 August 11, 1998, and served on respondent by certified mail on August 17, 1998, but respondent failed to submit a response.

Johnson Matter

On October 22, 1997, Larry L. Johnson retained respondent to handle a commercial bankruptcy for $925 in attorney’s fees and court costs. Mr. Johnson delivered to respondent his company’s records, income tax returns, and invoices from creditors. Respondent did not pursue the matter. Subsequently, respondent closed his law practice and relocated to the State of Texas, without giving notice to Mr. Johnson. Respondent also failed to return Mr. Johnson’s papers and failed to refund the unearned fees and unused costs.
On September 17, 1998, Mr. Johnson filed a complaint with the ODC advising of respondent’s misconduct. A copy of the complaint forwarded to respondent at his registered address was returned “unclaimed.” A copy of the complaint eventually was served on respondent by certified mail at his new address in Katy, Texas on September 80, 1998, but respondent failed to submit a response.

Adams Matter

Brenda Howell Adams retained respondent to represent her interests in a child custody matter. In August 1997, and in February 1998, Ms. Adams paid respondent $1,800 and $8,000, respectively. Subsequently, respondent failed to advise Ms. Adams of a scheduled hearing, and failed to appear at the hearing. Respondent failed |3to pursue the representation, and closed his law practice and relocated to the State of Texas without notice to his client. Respondent failed to return Ms. Adams’ files and failed to account for or refund the unearned fees and unused costs.
On October 9, 1998, Ms. Adams filed a complaint with the ODC advising of respondent’s misconduct. On October 23, 1998, the ODC served a copy of the complaint on respondent by certified mail at his new address in Katy, Texas, but respondent failed to submit a response.

Gradney Matter

On February 12, 1998, Lula Gradney retained respondent to handle a community property matter. Subsequently, respondent closed his office and relocated to the State of Texas without notice to his client. He failed to return Ms. Gradney’s papers and files.
On October 8, 1998, Ms. Gradney filed a complaint with the ODC seeking the return of her property. On November 21, 1998, the ODC served a copy of the complaint on respondent by certified mail at his new address in Katy, Texas on November 21, 1998, but respondent failed to submit a response.

Noyel Matter

In March 1998, Lovenia Noyel and others retained respondent to represent their interests in a personal injury action. In the fall of 1998, respondent advised Ms. Noyel that he would be relocating his law practice from Gonzales, Louisiana to Baton Rouge, Louisiana, but would continue to pursue her case. Thereafter, the clients heard nothing from respondent and were unable to determine his whereabouts. Respondent abandoned the legal matter and failed to release his clients’ files.
|4On January 25, 1999, Ms. Noyel filed a complaint with the ODC advising of respondent’s misconduct. A copy of the complaint forwarded by the ODC via certified mail to respondent at his last known address in Katy, Texas was returned “unclaimed.” A second copy, forwarded by ordinary mail, was not returned. No response to the complaint was ever filed by respondent.

*97
Warner Matter

In December 1996, Dianne Moore Warner retained respondent to institute a civil action against a construction company for $1,500. One and a half years later, respondent filed the petition, but withheld service on the defendant. Subsequently, respondent abandoned the legal mater. He closed his law practice and relocated to the State of Texas without notice to his client. He failed to return Ms. Warner’s files or refund the unearned fees.
On August 10, 1999, Ms. Warner filed a complaint with the ODC advising of respondent’s misconduct. The ODC forwarded a copy to respondent at his registered address, but it was returned with the notation “undeliverable as addressed unable to forward.” A second copy of the complaint forwarded by certified mail to respondent at his new address in Katy, Texas was returned “unclaimed.”
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed formal charges under docket number 01 B 1116, stemming from the Barbier, Johnson, Adams, Gradney and Noyel complaints. The charges asserted violations of Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5(f)(6) (failure to refund unearned fees), 1.16(a) (failure to properly | .^withdraw from representation upon termination), 1.16(d) (failure to protect client interests upon termination of the representation), 3.2 (failure to expedite litigation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
The ODC filed separate formal charges, under docket number Ol-B-1118, arising out of the Warner complaint. These formal charges asserted violations of the following provisions of the Rules of Professional Conduct: Rules 1.2(a) (scope of the representation), 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5(f)(6) (failure to refund unearned fees), 1.16(a) (failure to properly withdraw from representation upon termination), 1.16(d) (failure to protect client interests upon termination of the representation), 3.2 (failure to expedite litigation), 3.4(c) (failure to comply with tribunal orders), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).
Respondent failed to file answers to either set of formal charges. Accordingly, the matters were submitted to separate hearing committees on documentary evidence only. Supreme Court Rule XIX, § 11(E)(3). Respondent failed to submit evidence or argument for consideration.
1 siRecommendation of the Hearing Committee (Ol-B-1116)
After considering the evidence submitted by the ODC on the Barbier, Johnson, Adams, Gradney and Noyel complaints, the hearing committee found these charges were proven by clear and convincing evidence. The committee determined that respondent knowingly and intentionally violated duties to his clients, the profession, and the legal system, and that respondent’s actions resulted in actual harm to his clients. Specifically, the committee found respondent’s clients were wrongfully *98 deprived of their funds and that some may have lost the right to pursue their claims.
Relying on the ABA’s Standards for Imposing Lawyer Sanctions,[2] the committee concluded disbarment or suspension is the baseline sanction. The committee noted as aggravating factors the presence of dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, and indifference to making restitution. In mitigation, the committee noted the absence of a prior disciplinary record. After further considering jurisprudence from this court,[3] the committee recommended respondent be disbarred from the practice of law, as well as ordered to pay restitution to his clients as a condition to readmission.
| ^Recommendation of Hearing Committee (Ol-B-1118j
This hearing committee considered the charges arising out of the Warner matter, and concluded these formal charges were proven by clear and convincing evidence. Turning to the question of the appropriate sanction, the committee recommended that respondent be disbarred from the practice of law, as well as ordered to provide a full accounting and restitution to Ms. Warner as conditions to readmission.

Recommendation of the Disciplinary Board

The disciplinary board considered the recommendations of the hearing committees in Ol-B-1116 and Ol-B-1118 together. Respondent appeared at the board panel hearing and was given the opportunity to address the panel.[4]
After consideration of the evidence, the disciplinary board issued its written recommendation adopting the findings of each of the committees in all respects. Specifically, the board concluded respondent violated duties owed to his clients by failing to account for and refund unearned fees, abandoning his practice and clients, failing to expedite litigation, failing to definitively end his client representations, and failing to withdraw from his clients’ cases and return their files. Further, the board found respondent violated duties owed as a professional and to the legal system by failing to pay dues, failing to keep his registration statement current and ignor *99 ing the disciplinary process and the orders that have been issued. It determined respondent | Racted knowingly and intentionally and caused actual injury to his clients, the legal system, and the profession.
The board found the baseline sanction for respondent’s misconduct was disbarment. As aggravating factors, the board recognized the presence of dishonest or selfish motive, pattern of misconduct, multiple offenses, and bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency. It did not find any mitigating factors.[5] Accordingly, the board found no reason to deviate from the baseline sanction of disbarment. The board further recommended respondent return his clients’ files and provide a full accounting and restitution to all of his clients.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
The record supports the finding that respondent knowingly and intentionally failed to communicate with his clients, neglected his clients’ legal matters, abandoned his clients and his law practice, failed to expedite his clients’ litigation, failed to account for or refund unearned fees and/or unused costs to his clients, failed to return his clients’ files, and failed to cooperate with the ODC. Therefore, the sole issue presented for our consideration is the appropriate sanction for respondent’s misconduct.
In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct caused actual harm to his clients by depriving them of their funds for a substantial time and jeopardizing their legal matters. By utterly abandoning his law practice without notice, respondent has demonstrated he has little if any concern for the welfare of clients. Likewise, his failure to cooperate in the numerous disciplinary investigations displays an indifference to the practice of law and has impaired the efficient operation of the disciplinary process, causing harm to the legal profession as a whole. Numerous aggravating factors are present, including a pattern of misconduct and failure to make (or even attempt to make) restitution to clients.
Accordingly, we will accept the recommendation of the disciplinary board and disbar respondent from the practice of law. We will further order respondent to return his clients’ files and papers, as well as provide a full accounting and refund of any unearned fees and unused costs to each of his clients.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is the decision of this court that *100 the recommendation of the disciplinary board be accepted. Accordingly, it is ordered that the name of Raphael P. Poirrier be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Further, respondent is ordered to return all files and papers belonging to his clients, as well as ordered to |inprovide complete accountings and full restitution of any unearned fees and unused costs owed to his clients. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.

. Respondent has been ineligible to practice law since September 4, 1998 for failure to comply with his financial obligations (i.e., dues and disciplinary assessment) and mandatory continuing legal education requirements.

. Standard 4.41 provides that disbarment is generally appropriate when a lawyer abandons his practice and causes serious or potentially serious injury to a client. Standard 4.61 provides that disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client. Standard 7.2 provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potentially serious injury to a client, the public, or the legal system.

. In re White, 97-2731 (La.2/6/98), 706 So.2d 964 (disbarment imposed on attorney for neglect of a legal matter, failure to communicate, failure to account for and refund unearned fee, failure to withdraw as counsel upon discharge, and failure to attend deposition); In re Parker, 96-2697 (La.1/24/97), 687 So.2d 96 (attorney disbarred for conversion of client funds and failure to cooperate); and Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986) (disbarment imposed on attorney for conversion of client funds).

.Respondent testified that he experienced anxiety attacks at the time the violations occurred in 1998. He claimed he did not know what to do, so he "ran” from his clients and law practice. Respondent testified he now resides in Texas, where he is employed as a paralegal and is pursuing an MBA degree. He expressed remorse for his actions and that he has given up the practice of law. Respondent stated he was in possession of his clients' files and agreed to attempt to return them to his former clients.

. Although respondent asserted that he experienced anxiety attacks, the disciplinary board declined to find that the mitigating factor of personal or emotional problems is present, noting there was insufficient evidence in the record as to respondent’s mental state.