*754 ■ ATTORNEY DISCIPLINARY PROCEEDINGS.
I,PER CURIAM.
This disciplinary matter arises from three separate sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Louis Jef-fries Laque, III, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY

00-DB-005

Count I — The Thomas Matter
In January 1998, Nolan and Juanita Thomas retained respondent to represent them in a dispute with a Metairie car dealership. On January 28, 1998, Mr. and Mrs. Thomas paid respondent $255 in connection with the representation. Around the same time, the Thomases stopped paying their monthly note on the vehicle subject of the dispute. As a result, the finance company filed a petition seeking a writ of sequestration to seize the vehicle to satisfy the Thomases’ outstanding debt. When Mr. and Mrs. Thomas were served with the petition in April 1998, they immediately went to respondent’s office seeking advice. They spoke with respondent’s paralegal, | ¿who advised that no court date was scheduled in the sequestration proceeding and that she would research the matter.
On May 5, 1998, respondent contacted Mrs. Thomas and advised that his initial fee would not cover Ms handling of the sequestration proceeding. He told her that it was imperative that she seek counsel to avoid the seizure of the vehicle, and requested that she schedule an appointment to discuss the matter. When Mrs. Thomas did not schedule the appointment, respondent presumed he was not handling the sequestration proceeding. He did not send her a letter confirming his position. Ultimately, the Thomases did not appear at a scheduled court hearing and a default judgment was rendered against them for the value of the vehicle, $26,685.16, together with interest and attorney’s fees. Upon receiving notice of the judgment, the Thomases again returned to respondent’s office and were advised by the paralegal that respondent would file a motion to set aside the judgment. No action was ever taken on behalf of the clients. The Thom-ases and the finance company made nu *755 merous attempts to contact respondent, to no avail. Respondent failed to refund the unearned fee.
In August 1998, the Thomases filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct in the Thomas matter violated Rules 1.1 (failure to provide competent representation to a client), 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.16 (termination of the representation), 5.3 (responsibilities regarding non-lawyer assistants), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
1 zCount II — The Doublet Matter
In July 1997, Telesia Doublet retained respondent to represent her in a federal criminal proceeding. Ms. Doublet paid respondent $8,000 in connection with the representation. Respondent promised to enter into plea negotiations on Ms. Doublet’s behalf, but he failed to communicate with his client and failed to appear for scheduled appointments and meetings. As a result, Ms. Doublet hired new counsel, Robert Jenkins, who contacted the federal prosecutor and was advised that the plea offer had been withdrawn based on respondent’s failure to respond in the matter. Subsequently, Ms. Doublet and Mr. Jenkins made numerous attempts to contact respondent to request that he withdraw, to no avail. Respondent finally withdrew when the presiding judge contacted respondent to advise he was holding up the case. Notwithstanding, respondent failed to account for any earned portion and to refund the unearned portion of the legal fee Ms. Doublet paid. In August 1998, Ms. Doublet filed a complaint against respondent with the ODC.
The ODC alleged that respondent’s conduct in the Doublet matter violated Rules 1.3, 1.4, 1.5, and 1.16 of the Rules of Professional Conduct.
Count III — The Domangue Matter
In February 1998, Cary Lee Domangue paid respondent $800 to handle a child custody and support matter. For several months, Ms. Domangue made numerous attempts to speak to respondent by telephone, to no avail. Ms. Domangue finally reached respondent in mid-July 1998, approximately five months after the representation commenced, at which time respondent informed his client that he had not yet looked at her file. On several occasions, Ms. Domangue traveled from her home, which was located forty-five miles from respondent’s office, to meet with him pin person. However, respondent failed to appear each time. Finally, in November 1998, Ms. Domangue sent respondent a letter by certified mail terminating his representation and requesting that he refund her legal fee and return her file. Respondent failed to comply with Ms. Domangue’s request.
In November 1998, Ms. Domangue filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on February 25, 1999 with his entire file in the Domangue matter. Respondent appeared in response to the ODC’s subpoena and gave a sworn statement in which he promised to refund the $800 fee Ms. Domangue paid. Respondent failed to refund the fee.[2]
*756 The ODC alleged that respondent’s conduct in the Domangue matter violated Rules 1.3,1.4, 1:5,1.16, 3.2 (failure to make reasonable efforts to- expedite litigation), 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count IV — The Naquin Matter
In December 1996, Linton J. Naquin, Sr. retained respondent to institute an inverse condemnation or expropriation proceeding against the Louisiana Department of Transportation and Development. Respondent failed to communicate with his client and' failed to take any action in the matter on his behalf.
In September 1998, Mr. Naquin filed a complaint against respondent with the ODC. Respondent’s reply to the complaint was inadequate, necessitating the issuance of a subpoena compelling him to appear on February '25, 1999 with his entire file in the Naquin matter. Respondent appeared' and gave a sworn statement, but he did not produce his file. The matter was then continued to March 17, 1999. On that date, [¡¡respondent informed the ODC that he was ill with the flu, and he indicated that he would voluntarily appear on April 8, 1999. On that date, respondent informed the ODC that he was having' car trouble, and he requested that the matter be continued to April 19, 1999. Respondent failed, to appear on that date.
■ The ODC alleged that respondent’s conduct in the Naquin matter violated Rules 1.3, 1.4, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count V — The Hidalgo Matter
In December 1998, Jose Hidalgo paid respondent $300 to represent him in a domestic proceeding. Respondent promised to obtain a continuance of a court hearing scheduled in the matter, but Mr. Hidalgo could not reach respondent to ascertain whether the continuance was granted. When Mr. Hidalgo went to court on the hearing date, respondent was not present and Mr. Hidalgo learned from the trial judge that respondent’s motion for a continuance had been denied. The hearing proceeded and Mr. Hidalgo was forced to represent himself.
Following the hearing, Mr. Hidalgo went to respondent’s office and waited for several hours, but no one appeared. Mr. Hidalgo then returned home and found a telephone message from a member of respondent’s office staff stating that a continuance had been granted by the trial court and that Mr. Hidalgo would be informed of the new court date. Mr. Hidal-go made numerous attempts to contact respondent to discuss the matter, to no avail.
On January 28, 1999, Mr. Hidalgo filed a complaint against respondent with the ODC. On the same date, respondent refunded the sum of $300 to Mr. Hidalgo. Respondent failed to cooperate with the ODC in its investigation of Mr. Hidalgo’s complaint.
|fiThe ODC alleged that respondent’s conduct in the Hidalgo matter violated Rules 1.1, 1.3, 1.4, 5.3, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count VI — The Harrell Matter
In June 1997, Monty Harrell retained respondent to represent him in a property damage matter. Respondent filed suit on behalf of his client in July 1997, but unbeknownst to Mr. Harrell, failed to request service of the petition on the defendant. In August 1997, Mr. Harrell retained respondent to represent him in a succession proceeding. Respondent failed to communicate with his client and failed to take any action in the matter on his behalf.
*757 In March 1999, Mr. Harrell filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct in the Harrell matter violated Rules 1.1,1.3, 1.4, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count VII — The Strauss Matter
On January 28,1999, Harold W. Strauss, III retained respondent to represent him in a domestic proceeding. Mr. Strauss paid respondent a $300 retainer fee in connection with the representation, and he advised respondent’ that a hearing was scheduled in the matter on March 19,1999. Respondent failed to communicate with his client in advance of the court date, and he failed to appear at the hearing, which proceeded in his absence. Following the hearing, Mr. Strauss made numerous attempts to contact respondent to discuss the matter, to no avail. Respondent also failed to refund the unearned fee.
|7On March 23, 1999, Mr. Strauss filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct in the Strauss matter violated Rules
1.1,1.3, 1.4, 1.5, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count VIII — The Nolan Matter
In April 1998, Ann Nolan retained respondent to defend her in a lawsuit filed against her by the hospital where she was formerly employed. Ms. Nolan paid respondent a $1,000 retainer fee in connection with this representation. At the same time, Ms. Nolan requested that respondent file suit against the hospital for wrongful termination. Respondent accepted this representation on a one-third contingent fee basis, and he filed Ms. Nolan’s suit in October 1998. Thereafter, respondent failed to communicate with his client and failed to take any action in either legal matter on her behalf. Respondent also failed to refund the unearned fee.[3]
In July 1999, Ms. Nolan filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct in the Nolan matter violated Rules 1.1,1.3, 1.4, 1.5, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count IX — The Washington Matter
Sometime in 1998, after allegedly contracting food poisoning at a fast food restaurant, Cynthia Washington retained respondent to represent her in connection with the matter. Respondent apparently filed a claim with the restaurant’s insurer on behalf | Rof Ms. Washington, but no settlement was made because the claim was prescribed. Respondent failed to communicate with his client in the course of handling the matter and failed to take any further action on her behalf.
In August 1999, Ms. Washington filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct in the Washington matter violated Rules 1.1, 1.3, 1.4, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count X — The Tassin Matter
In September 1997, Raymond Tassin retained respondent to represent him in a personal injury matter. Respondent time *758 ly filed suit on Mr. Tassin’s behalf, but thereafter he failed to communicate with his client and failed to take any steps in the prosecution of the lawsuit. In September 1999, Mr. Tassin’s case was dismissed because respondent failed to appear on the day of trial.
In October 1999, Mr. Tassin filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct in the Tassin matter violated Rules 1.1, 1.3, 1.4, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
On January 13, 2000, the ODC filed ten counts of formal charges against respondent in 00-DB-005. The formal charges were served upon respondent personally. Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § |911(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
Following its review of the matter, the hearing committee recommended that respondent be suspended from the practice of law for three years, with one year deferred. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation in 00-DB-005.
On September 21, 2001, the disciplinary board recommended to this court that respondent be suspended from the practice of law for three years, with one year deferred. This recommendation was lodged in the court’s docket number Ol-B-2641. Neither respondent nor the ODC objected to the disciplinary board’s recommendation, but on our own motion, we ordered briefing on the issue of an appropriate sanction. Upon reviewing the ODC’s brief, we learned that a second set of formal charges was then pending against respondent. Accordingly, on March 13, 2002, we remanded the Ol-B-2641 matter to the disciplinary board for consolidation with the second set of formal charges, and ordered the issuance of a single recommendation of discipline encompassing both matters. In re: Laque, 01-2641 (La.3/13/02), 812 So.2d 622.

01-DB-010

Count I — The Johnson Matter
In October 1996, respondent was retained to handle a Social Security matter for Kenneth Edward Johnson. Respondent failed to communicate with his client and failed to take any action in the matter on his behalf.
hnln April 2000, Mr. Johnson filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint, necessitating the issuance of a subpoena compelling him to appear and answer the complaint under oath.
The ODC alleged that respondent’s conduct in the Johnson matter violated Rules 1.3, 1.4, 3.2, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count II — The Blanchard Matter
In November 1998, Patricia Blanchard retained respondent to handle a personal injury case for her minor daughter, Yvonne Blanchard. Respondent failed to communicate with his client and failed to take any action in the matter on her behalf.
In May 2000, Ms. Blanchard filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint, necessitating the issuance of a sub *759 poena compelling him to appear and answer the complaint under oath.
The ODC alleged that respondent’s conduct in the Blanchard matter violated Rules 1.3, 1.4, 3.2, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count III — The Valure Matter
In 1998, David Joseph Valure retained respondent to handle a domestic matter. Respondent failed to communicate with his client and failed to take any action in the matter on his behalf.
In May 2000, Mr. Valure filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint, necessitating the issuance of a subpoena compelling him to appear and answer the complaint under oath.
The ODC alleged that respondent’s conduct in the Valure matter violated Rules 1.3, 1.4, 3.2, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
| yjCount IV~The Cook Matter
Nathaniel Cook paid respondent $1,500 to represent him in a pending criminal case. Respondent failed to communicate with his client and failed to take any action in the matter on his behalf.
In June 2000, Mr. Cook filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
The ODC alleged that respondent’s conduct in the Cook matter violated Rules 1.3, 1.4, 3.2, 8.1(c), and 8.4(g) of the Rules of Professional Conduct.
Count V — The Dodson Matter
In May 1997, John Roger Dodson retained respondent to handle a child custody matter. Respondent failed to take any action on behalf of his client.
In July 2000, Mr. Dodson filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint, necessitating the issuance of a subpoena compelling him to appear and answer the complaint under oath.
The ODC alleged that respondent’s conduct in the Dodson matter violated Rules 1.4,8.1(c), and 8.4(g) of the Rules of Professional Conduct.

Count VI

On October 11, 2000, respondent gave a sworn statement in connection with the ODC’s investigation of the complaint filed by Mr. Dodson. At that time, respondent was asked to update his primary registration statement address and was informed that as of August 14, 2000, he had been certified ineligible to practice law for failure to comply with the mandatory continuing legal education requirement. As of 112the date of the filing of the formal charges in this matter, respondent still had not updated his registration statement address and was still ineligible to practice law.
The ODC alleged that respondent’s conduct violated Rules 1.1(b) (failure to comply with the mandatory continuing legal education requirement) and 8.4 of the Rules of Professional Conduct.
On January 25, 2001, the ODC filed six counts of formal charges against respondent in 01-DB-010. The formal charges were served upon respondent personally. Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
*760 Following its review of the matter, the hearing committee recommended that respondent be disbarred. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation in 01-DB-010.

02-DB-006

On January 17, 2002, the ODC filed a third set of formal charges against respondent in 02-DB-006. The third set of formal charges encompasses one count of misconduct and stems from a complaint filed against respondent by Linda Stanfill.
On September 20, 1996, Mindy Stanfill was injured in an automobile accident in the parking lot of the high school that she attended. In November 1996, Mindy’s parents retained respondent to handle the personal injury case. Respondent did not keep the family informed of the status and progress of the matter, and did not regularly h ¡¡make himself available to meet with his clients. Respondent also did not return telephone calls concerning the case. When Mrs. Stanfill was finally able to reach respondent, he told her that suit had been filed, when in fact no suit was ever filed.
In March 2001, Mrs. Stanfill filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on July 6, 2001 with his entire file in the Stanfill matter. Respondent appeared in response to the subpoena and gave a sworn statement to the ODC, in which he explained that he did not neglect the Stanfill case, nor did he fail to communicate with his clients. Respondent also denied that he told Mrs. Stanfill that suit had been filed in connection with Mindy’s claim. Respondent testified that he referred Mindy for extensive medical treatment after he was retained in November 1996. On July 26, 1997, respondent wrote a letter to the tortfeasor’s insurer, Allstate Insurance Company, offering to settle the case for $78,500.[4] Respondent heard nothing from Allstate in response to the settlement demand, but he testified that during the first week of August 1997, Mrs. Stanfill left a message on his telephone answering machine terminating his representation. Respondent testified that after he received the message he wrote a note to his secretary asking her to call Mrs. Stanfill to confirm his disengagement.[5] Respondent assumed the call was made, but could not be sure, and admitted that in any event, “what happened after that I don’t know because I lack that meticulous fashion in this case.” Respondent also admitted that he did not inform his clients in writing that Mindy’s personal injury claim would | uprescribe on September 20, 1997, and that the Stanfills should seek new counsel to protect her interests. To the extent that any mishandling of Mindy’s file occurred, respondent attributed it to his bleeding ulcers, a condition which ultimately resulted in emergency surgery in *761 October 1998.[6]
In response to the testimony given by respondent, Mrs. Stanfill denied that she ever terminated respondent’s representation. She explained that she called respondent numerous times asking him to contact her, but that she did not discharge him. When Mrs. Stanfill realized that the. one-year anniversary of her daughter’s accident was approaching, her husband checked with respondent to see if a suit had been filed. Respondent assured Mr. Stanfill that he should not worry because “it will be taken care of.” Mrs. Stanfill did not give the matter further thought until she received a telephone call from an attorney representing one of her daughter’s medical providers, inquiring whether the case had settled because some of the medical bills remained unpaid. After Mrs. Stanfill related the problems she had in communicating with respondent, the attorney offered to “check with the Hahnville Courthouse” to see if the suit was ever actually filed. A few days later, the attorney called to inform Mrs. Stanfill that there was no record of a lawsuit in Mindy’s case.[7]
The ODC filed one count of formal charges against respondent in 02-DB-006, alleging that his conduct in the Stanfill matter violated Rules 1.3 and 1.4 of the Rules of Professional Conduct. The formal charges were served upon respondent personally on February 28, 2002. On September 4, 2002, respondent answered the formal charges and denied any misconduct.
11sThe 02-DB-006 matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee on November 22, 2002. Respondent appeared and testified on his own behalf. The ODC called Mr. and Mrs. Stanfill, as well as their daughter Mindy, to testify in person before the committee.
After considering the evidence presented at the hearing, the hearing committee found the formal charges were proven by clear and convincing evidence. The committee recommended that respondent be suspended from the practice of law for one year and one day and that he be required to attend Ethics School. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation in 02-DB-006.
DISCIPLINARY BOARD RECOMMENDATION
On January 29, 2003, the three sets of formal charges pending against respondent were consolidated by order of the chair of the adjudicative committee of the disciplinary board. On December 29, 2003, the disciplinary board filed in this court a single recommendation of discipline encompassing the consolidated matters.
The disciplinary board concurred in the hearing committees’ factual findings and application of the Rules of Professional Conduct. The board found respondent violated the Rules of Professional Conduct as charged by the ODC in the three sets of formal charges.
Respondent violated duties owed to his clients, the legal system, and as a professional. Respondent’s actions were negligent arid knowing toward his clients and were knowing and intentional toward the disciplinary system. Clients were injured *762 by the delays in resolving their legal matters; loss of legal remedies, and having to obtain new counsel. The legal system was injured by the use of limited resources in an effort 11fito afford respondent an opportunity to participate and his failure to, do so. Currently, respondent is ineligible to practice law as of August 14, 2000 for failing to comply with his professional obligations.
The board found the record supports the following aggravating factors: a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and refusal to acknowledge the wrongful nature of the conduct. In mitigation, the board recognized respondent’s personal problems, his inexperience in the practice of law (admitted October 1996), and remorse.
Considering the ABA’s Standards for Imposing Lawyer Sanctions and the prior jurisprudence, the board suggested the appropriate baseline sanction for respondent’s misconduct in these three matters is disbarment or a lengthy suspension from the practice of law. The board noted the seriousness of respondent’s actions, in that on numerous occasions he has neglected to adequately communicate with his clients and to diligently pursue their legal matters, and has failed to cooperate in the investigation of the complaints filed against him. Nevertheless, in light of the mitigating factors present, the board concluded that respondent’s misconduct is adequately addressed by a short period of suspension.
Based on this reasoning, the disciplinary board recommended that respondent be suspended from the practice of law for three years, with eighteen months deferred, followed by a period of probation. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
|17Neither respondent nor the ODC objected to the disciplinary board’s recommendation, but once again, on our own motion, we ordered the parties to submit briefs addressing the issue of an appropriate sanction. Both respondent and the ODC filed briefs in response to the order.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the findings of the hearing committees and the disciplinary board that respondent has violated the professional rules as charged. The sixteen complaints filed against respondent by his clients allege strikingly similar facts. In each instance, respondent accepted the representation and performed minimal legal work, if any, before completely abandoning the legal matter and his client. With the exception of one case, respondent failed to account for the legal fee he was *763 paid or to refund the unearned portion. Respondent intentionally avoided any contact with his clients by refusing to return telephone calls, reply to correspondence, or make himself available for in-person appointments; rather, he used his office staff to communicate [18with the clients on the few occasions where there was any communication.[8] Ultimately, respondent closed his office down without notice to his clients. In almost all of the cases, respondent’s clients suffered actual injury. They were denied their funds and their legal matters were abandoned, resulting in a loss of their legal rights or the needless delay of their cases. Further, many were prejudiced by respondent’s failure to appear at scheduled proceedings. The ODC was then forced to utilize its limited resources to investigate these numerous complaints with little or no cooperation from respondent. In our view, respondent has demonstrated in a convincing fashion that he has no regard for the welfare of his clients or for his professional obligations.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
We have imposed a wide range of sanctions in cases involving varying degrees of incompetence, neglect, failure to communicate, failure to return unearned fees, and failure to cooperate with the ODC in its investigation. However, in cases that involve a substantial number of clients, the sanctions imposed have fallen on the high end of the range. See, e.g., In re: Wharton, 03-1816 (La.10/17/03), 872 So.2d 459 (three-year suspension; seven clients); In re: Watley, 03-0233 (La.9/5/03), 854 So.2d 315 (disbarment; six clients); In re: Phillips, 03-1354 (La.6/20/03), 849 So.2d 506 (disbarment; three sets of formal charges involving a total of 24 counts of misconduct); In re: Turissini, 03-0549 (La.6/6/03), 849 So.2d 491 (three-year suspension; six clients); In re: Poirrier, 01-1116, 01-1118 (La.6/29/01), 791 So.2d 94 (disbarment; six clients). The prior jurisprudence therefore establishes a baseline sanction of disbarment for respondent’s mishandling of the cases of sixteen clients.
As aggravating factors, we recognize respondent’s pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. In mitigation, we acknowledge respondent’s testimony that he experienced health and other personal problems in 1998 and 1999. However, we cannot give significant weight to this mitigating factor, as respondent’s misconduct occurred both prior to and long after the time period in question.
Accordingly, under the circumstances presented in this case, we find no basis to deviate from the baseline sanction of disbarment, much less to the eighteen-month period of actual suspension that has been proposed. In light of the seriousness of *764 respondent’s conduct and the sheer number of clients who have suffered actual harm as a result, we must reject the disciplinary board’s recommendation and impose disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Louis Jeffries Laque, III, Louisiana Bar Roll number 24513, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys | anand his license to practice law in the State of Louisiana shall be revoked. Respondent is ordered to furnish complete accountings and full restitution of all unearned legal fees to his clients subject of the formal charges. Respondent shall also repay to the Louisiana State Bar Association’s Client Protection Fund any amounts paid to claimants on his behalf. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent has been ineligible to practice law since August 14, 2000 for failing to comply with the mandatory continuing legal education requirement and since September 1, 2000 for failing to pay his bar dues and the disciplinary assessment.

. In August 1999, Ms. Domangue filed a claim for relief with the Louisiana State Bar *756 Association's Client Protection Fund. The status of that claim is not dear from the record.

. In October 2000, Ms. Nolan filed a claim for relief with the Louisiana State Bar Association's Client Protection Fund. The status of that claim is not clear from the record.

. Interestingly, the ODC subpoenaed Allstate's claims file in connection with its investigation of Mrs. Stanfill's complaint against respondent. The file contains three letters— one from respondent informing the adjuster of his representation and two from the adjuster to respondent requesting information — but does not contain the settlement demand that respondent testified he made by letter dated July 26, 1997. Indeed, it appears that the last activity in Allstate's file occurred on May 5, 1997, when the adjuster telephoned respondent for information about the status of Mindy's medical treatment.

. Respondent was never able to produce the note. During his sworn statement, respondent claimed he had forgotten it at home; during the formal hearing, respondent claimed the note had been misplaced.

. In addition to the medical problems stemming from respondent's ulcers, his first born child died in January 1998, his niece was raped in early 1999, and his father died in November 1999.

. Allstate paid the Stanfills for the property damage to their vehicle, but they received no compensation for Mindy's personal injuries.

. This was usually to the detriment of the clients, who in many cases received incorrect information from respondent’s staff.