JOHNSON, J.,
would grant the rehearing.
|. Was the Rehearing Application Timely?
The Supreme Court Clerk does not file a Notice of Judgment into the record when a per curiam is issued, and, in the absence of the notice, there is no definitive answer as to when the judgment was mailed. Therefore, we can only assume that the judgment was mailed to respondent on the same date that this Court rendered the judgment.

Defective Notice of Disciplinary Board Hearing

The record demonstrates that notice of the respondent’s initial charge, filed on May 24, 2001, was sent via certified mail to the respondent at 1515 Poydras Street, Suite 2222, New Orleans, LA. According to a minute entry filed on July 22, 2005, the respondent confirmed that his office had relocated and all correspondence should be sent to 1008 Jourdan Avenue, New Orleans, LA 70117 (which was also his residence). Respondent’s mitigation hearing was first scheduled for September 28, 2005, a month after Hurricane Katrina devastated Louisiana, then rescheduled for February 17, 2006. The record also demonstrates that the “Notice of Committee Hearing,” for February 17, 2006 hearing, stated the following:
I, Donna L. Roberts, the undersigned Administrator for the Louisiana Attorney Disciplinary Board, certify that a copy of the foregoing Notice Hearing has been mailed to the Respondent and Disciplinary Counsel, by United States Mail, prepaid, this 29th day of December, 2005 at the following address:
Mr. Bruce R. Wiliams
Tate & Williams, LLC
1008 Jourdan Avenue
P.O. Box 5889
l?New Orleans. LA 70158-8889[1]
On April 13, 2007, the Bywater Station Manager of the United States Post Office, the post office responsible for delivering mail/packages to the lower ninth ward, reported “there was no delivery service to 1008 Jourdan Avenue until two weeks ago, as the address did not have a box.”
A “Revised” notice, dated January 6, 2006, was mailed to: PO Box 58889, New Orleans, LA 70158-8889, and another “Revised” notice was mailed to 480 Usher Road, Harvest, Alabama 35749. The record also shows that on December 29, 2005, notice was sent via federal express to 1008 Jourdan, New Orleans, LA 70158. According to the affidavit of the Louisiana Attorney Disciplinary Board’s (LADB’s) docket clerk, a federal express package was delivered to the respondent’s father’s address in Harvest, Alabama on January 12, 2006 and “left at the front door” of that residence. The affidavit of Ronald Beaver, the investigator for the LADB, suggests that the respondent had actual notice of the hearing as he left messages for the respondent with his elderly father and brother, and also left cell phone messages for the respondent to call the ODC
It is important to note that the respondent’s office and residence were located in the Lower Ninth Ward of New Orleans. As a result of media coverage, people all over the world are aware of the levee breach which destroyed nearly every structure in that section of the City following Hurricane Katrina. The ODC details the numerous efforts made to reach respondent via his cell phone (messages left), then notes his failure to appear for the hearing scheduled for February 17, 2006, *147 here in New Orleans. Very little business as usual was going on in New Orleans six months Pppst-Katrina. However, the ODC assigned an investigator to conduct a comprehensive search for the respondent. Respondent alleges, and it is unrefuted, that he has lived in Mississippi, Alabama, Tennessee, and in other parts of Louisiana since the storm. This sole practitioner apparently had no permanent office, telephone number or support staff during this period of time.

Appropriate Discipline

The Office of Disciplinary Counsel (ODC) argued that the respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client); 1.4 (failure to communicate with a client); 1.9 (conflict of interest); 1.16(d) (obligations upon termination of the representation); and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct. The respondent requested a hearing to present evidence of his mitigating circumstances that contributed to his alleged misconduct. The respondent alleged that during the time of the alleged misconduct, he was diagnosed with diabetes, and in addition was caring for a sick mother. The ODC argued that the respondent failed to appear at the mitigation hearing, which was first scheduled for September 28, 2005, a month after Hurricane Katrina devastated Louisiana, then rescheduled for February 17, 2006.
In cases involving instances of neglect, failure to communicate with clients, and failure to cooperate with the ODC in its investigations, the Court has imposed sanctions ranging from suspensions to diarment.[2] In In re: Waltzer, 04-1032 (La.|10/8/04),4 883 So.2d 973, the Court imposed a two-year suspension upon an attorney who, among other misconduct, neglected three legal matters, failed to communicate with three clients, failed to properly terminate representations, and failed to cooperate with the ODC. In In re: Wharton, 03-1816 (La.10/17/03), 872 So.2d 459, the Court imposed a three-year suspension upon an attorney who neglected seven legal matters, failed to communicate with four clients, failed to refund unearned fees to five clients, and failed to cooperate with the ODC in three investigations. In In re: Romero, 04-3087 (La.4/29/05), 900 So.2d 819, the attorney was involved in numerous instances of neglect and failure to communicate as well as one instance of conversion of less than $2,000. For this misconduct, the attorney was suspended from the practice of law for three years. In In re: Brown, 04-1119 (La.1/14/05), 892 So.2d 1, the attorney was suspended for three years for neglecting several legal matters, *148 failing to communicate with clients, failing to refund unearned fees, and failing to cooperate with the ODC. In In re: Phelps, 02-1837 (La.9/30/02), 827 So.2d 1140, the attorney was involved in seven instances of neglect of legal matters and failure to communicate with clients. Because the attorney’s misconduct was a result of poor management skills, rather than dishonest or improper motives, this Court imposed a deferred one-year suspension with two years of supervised probation.
This disciplinary matter involves an attorney, who allegedly neglected legal matters and failed to communicate with clients. Mr. Williams’ situation is more akin to In re Phleps, where this Court, because the attorney’s misconduct was a result of poor management skills, rather than dishonest or improper motives, decided that disbarment was not warranted. In light of the fact that respondent was not charged with any instances of conversion of client funds or failure to refund unearned fees, |sa deferred suspension followed by supervised probation would be adequate discipline. The recommendation to disbar apparently was not related to the severity of the original charges that were lodged against the respondent, but was based on his failure to cooperate, namely appear at the February 17, 2006 hearing.
We must presume that respondent had to reconstruct records, if both his home and office were destroyed. With all the concessions made for other Hurricane Katrina survivors, I find the zealous pursuit of this sole practitioner in this bar matter, particularly offensive.

. This zip code corresponds to the post office box and not the Jourdan Avenue address. There is no evidence in the record as to notices sent to the post office box.

. Disbarment is usually warranted when client’s fees are involved, i.e., failure to refund unearned fees and/or unused costs; commingling of funds, conversion, etc. In In re: Brancato, 06-0124 (La.5/26/06), 932 So.2d 651, an attorney was disbarred for numerous instances of neglect, failure to communicate, and failure to cooperate. He also failed to refund unearned fees to several clients and was ordered to make restitution. In re: Laque, 03-3539 (La.6/25/04), 876 So.2d 753, the attorney was disbarred because he neglected and abandoned sixteen legal matters without notice to his clients, failed to communicate with his clients, failed to refund unearned fees, closed his office without notice to his clients, and failed to cooperate with the ODC. In re: Poirrier, 01-1116, 01-1118 (La.6/29/01), 791 So.2d 94, an attorney was disbarred for abandoning his law practice, neglecting several legal matters, failing to communicate with his clients, failing to account for or refund unearned fees and/or unused costs, failing to return his clients’ files, and failing to cooperate with the ODC.
In the present case, there was no allegation made, or evidence presented, that suggested that the respondent mismanaged any client's funds.