ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Keisha M. Jones-Joseph, an attorney *1154 licensed to practice law in Louisiana, but currently ineligible to practice.[1]
FORMAL CHARGES
Count I — The Taylor Matter
In July 2008, Loraine Taylor hired respondent to represent her in a community property partition matter. Although respondent accepted a $8,000 fee payment plus $300 in costs, a copy of court minutes reflects that she took no action to advance the litigation. According to the minute entry dated August 12, 2008, respondent enrolled as counsel on behalf of Ms. Taylor. The next entry, which is dated March 23, 2011, reflects the filing of a rule by Ms. Taylor’s new counsel, J. Ransdell Keene. Following an unsuccessful attempt to notify respondent of Ms. Taylor’s complaint, the ODC hand-delivered a copy of the complaint to her in February 2011, but she failed to respond.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to |2communicate with a client), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Count II — The Smith Matter
In December 2008, Celestine Smith hired respondent to represent her in a personal injury matter. Thereafter, Ms. Smith attempted to contact respondent multiple times, both by phone and by visiting her office, but she was unsuccessful. In August 2009, Ms. Smith met with respondent, at which time respondent advised that due to health problems, she would be referring client files to other attorneys and would soon inform Ms. Smith whether she would be referring her file. When she did not hear from respondent, Ms. Smith attempted to contact her but was again unsuccessful. In February 2012, Ms. Smith Anally received correspondence from respondent. In the correspondence, respondent claimed to have sent to her a closing letter dated October 19, 2009 advising that her file was enclosed and that she had until November 21, 2009 to file suit. However, Ms. Smith did not receive the closing letter or the file.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.2, 1.3, 1.4, 1.16(d), 3.2, 8.4(a), and 8.4(c).
Count III — The Bums Matter
In March 2009, Tatianna Burns hired respondent to represent her in a child custody matter, for which she paid respondent $4,500. After respondent’s | ^secretary terminated her employment, respondent did not respond to Ms. Burns’ phone calls or emails. When respondent’s phone number was disconnected, Ms. Burns was able to reestablish contact with her through a third party who requested a refund on Ms. Burns’ behalf. Although respondent promised to refund the fee to Ms. Burns within thirty days, she did not do so. After receiving notice of Ms. Burns’ complaint, respondent sought an extension of time in which to respond. *1155 Nonetheless, she did not provide a written response.[2]
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.2, 1.3, 1.4, 1.5 (fee arrangements), 1.16(d), 8.2, 8.1(b), 8.1(c), 8.4(a), and 8.4(c).
Count TV — The Rozier Matter
In June 2008, Rita Rozier hired respondent to represent her in a custody and child support matter for a flat fee of $2,500. Thereafter, respondent failed to maintain sufficient communication with Ms. Rozier and did not properly handle her case. When she became dissatisfied ■with the representation, Ms. Rozier attempted to contact respondent through visitation, by phone, and in writing, all in an effort to terminate services and retrieve her file, but she was not successful. Another attorney tried to contact respondent on Ms. Rozier’s behalf but was likewise unsuccessful. After the ODC was able to reach respondent, she unilaterally converted the flat fee to an hourly fee in order to claim that all but 63$ of the fee paid by Ms. Rozier was earned.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1, 1.2, 1.3, 1.4,1.16(d), and 8.4(a).
\4Count V — The Perrodin Matter
In November 2007, Barbara Perrodin hired respondent to obtain a restraining order and to handle her custody, child support, divorce, and community property matters. Her fee agreement with respondent was $1,500 for the restraining order and $6,000 for the remaining matters. Although she ultimately paid approximately $10,878.50 for these services, Ms. Perrodin lost contact with respondent, was not divorced, and stopped receiving child support payments, which were being mailed directly to respondent’s office. Ms. Perro-din left messages for respondent at a phone number that was posted on her office door but received no return communication. After receiving notice of Ms. Perrodin’s complaint, respondent sought an extension of time in which to respond. Nonetheless, she did not provide a written response.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1, 1.2, 1.3, 1.4, 1.16(d), 3.2, 8.1(b), 8.1(c), 8.4(a), and 8.4(c).
Count VI — The Williams Matter
In 2007, Alphonso Williams hired an attorney to represent him in child support, custody, and divorce matters. When the attorney ceased the practice of family law, the representation was transferred to respondent. In April 2008, Mr. Williams consented to the transfer and agreed to pay respondent a $4,000 flat fee to represent him. In October 2009, respondent withdrew without completing the representation. When Mr. Williams tried to obtain information about his case, respondent failed to respond to his correspondence and phone calls. Mr. Williams had to retain and pay another attorney to complete the representation. Respondent also unilaterally converted her flat fee to an hourly rate in order to claim that no refund is due to Mr. Williams. Respondent received notice of the complaint in |fiOctober 2009 and a hand-delivered copy of the complaint in December 2010. While she claimed to have responded to the ODC by fax and by mail, the ODC did not receive her response.[3]
*1156 The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 1.16(d), 8.1(b), 8.1(c), and 8.4(a).
Count VII — The Walls Matter
In July 2009, Carrie Mae Walls hired respondent to assist her in obtaining grandparent visitation. Respondent did not perform the services for which she was hired and Ms. Walls’ attempts to contact her went unanswered. After discovering a “by appointment only” notice posted on the door of respondent’s office, Ms. Walls attempted to contact respondent by phone to set an appointment, but she was not successful. Following receipt of Ms. Walls’ complaint, respondent provided a cursory reply and purportedly refunded the entire fee.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1, 1.2, 1.3, 1.4, 3.2, and 8.4(a).
Count VIII — The Trust Account Matter
In July 2008, the ODC received notice of an overdraft in respondent’s trust account. The ODC sent notice to respondent via certified mail requesting a written explanation for the overdraft and bank statements for the previous six months. Although respondent’s intern signed the return receipt card, respondent did not reply. Respondent was then notified by certified mail that the ODC had opened a disciplinary investigation, but the certified mail notice was returned unclaimed. After receiving a second notice at her home address, respondent submitted a reply. | (¡Pursuant to the ODC’s request, she supplied additional statements and information regarding the trust account. In explanation for the overdraft, respondent indicated she failed to timely make a deposit. Because the deposit represented funds from other clients, she used one client’s funds to pay the expenses of another and ultimately converted client funds.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons), 8.1(b), 8.1(c), 8.4(a), and 8.4(c).
Count IX — The Carino Matter
Santiago Carino hired respondent to represent him in an employment discrimination claim, for which he paid her a $2,500 retainer fee. Initially, Mr. Carino had no difficulty communicating with respondent, but communication between them ceased when Mr. Carino decided to move to Texas. Although Mr. Carino personally gave respondent his new contact information and attempted to reach her numerous times, a representative from the Louisiana State Bar Association ultimately contacted respondent on his behalf. Thereafter, respondent contacted Mr. Car-ino, advising that he would soon be receiving a letter from her, but the correspondence was never received.
The ODC sent notice of Mr. Carino’s complaint to respondent via certified mail. Although her paralegal signed the return receipt card, respondent did not reply. The ODC then contacted her by phone on February 11, 2009. That day, respondent faxed to the ODC a one-page response to the complaint, stating that she recalled the file being closed and in storage. After reviewing her response, Mr. Carino indicated he had not been notified the file was closed and had not received a refund. The ODC’s auditor determined there were insufficient funds in respondent’s trust account at the time of the purported refund. Respondent |7admitted the check never cleared her account and promised to issue another refund check, which Mr. Carino never received.
The ODC alleged respondent violated the following provisions of the Rules of *1157 Professional Conduct: Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16(d), 8.1(b), 8.1(c), 8.4(a), and 8.4(c).
DISCIPLINARY PROCEEDINGS
In December 2012, the ODC filed formal charges against respondent. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration. Hearing Committee Report
After considering the ODC’s deemed admitted submission, the hearing committee adopted the deemed admitted factual allegations of the formal charges as its factual findings. Based on those facts, the committee determined respondent violated the Rules of Professional Conduct as charged.
The committee determined respondent knowingly and intentionally violated duties owed to her clients, the legal system, and the legal profession, causing substantial harm. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the applicable baseline sanction ranges from suspension to disbarment.
The committee found the following aggravating factors present: a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding |sby intentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1998). The only mitigating factor present is the absence of a prior disciplinary record.
Turning to the issue of an appropriate sanction, the committee determined that based on the ABA Standards, the aggravating and mitigating factors, and the prior jurisprudence of the court, respondent’s conduct warrants disbarment.
Neither respondent nor the ODC «filed an objection to the hearing committee’s report.

Disciplinary Board Recommendation

After review, the disciplinary board determined the hearing committee’s factual findings in this deemed admitted matter are supported by the factual allegations in the formal charges and/or by the evidence submitted in support of those allegations, with one exception relating to the Williams matter (see note 3, supra).
The board also determined respondent violated the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rules 1.1 and 1.2. According to the board, the formal charges do not specifically allege that respondent failed to provide competent representation or that she somehow derogated from the objectives desired by her clients.
The board determined respondent knowingly, if not intentionally, violated duties owed to her clients and the legal profession. She caused significant harm to her clients by collecting fees and not performing services, by failing to refund unearned fees, and by converting trust account funds. Furthermore, she caused the ODC to expend additional resources by failing to cooperate with its investigations in a prompt manner, if at all. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is | ^disbarment. The board adopted the aggravating and mitigating factors found by the committee, and also found indifference to making restitution as an additional aggravating factor.
*1158 After considering the jurisprudence of the court, the board found no reason to deviate from the baseline sanction of disbarment. Accordingly, the board recommended respondent be disbarred. The board also recommended she refund all unearned fees and be assessed with the costs and expenses of this matter.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
|! ftThe record in this deemed admitted matter supports a finding that respondent neglected legal matters and failed to communicate with clients, essentially abandoning her law practice. She also failed to provide accountings of fees paid, failed to refund unearned fees, and failed to cooperate with the ODC in its investigations. Based on these facts and the other evidence in the record, respondent has violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 1.15, 1.16(d), 3.2, 8.1(c), 8.4(a), and 8.4(c).
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987).
The record supports a finding that respondent violated duties owed to her clients and the legal profession, causing actual harm. The applicable baseline sanction in this matter is disbarment.[4] The aggravating and mitigating factors found by the disciplinary board are supported by the record.
Turning to the issue of an appropriate sanction, case law indicates that we have imposed disbarment for misconduct similar to that committed by respondent. See, e.g., In re: Hatfield, 08-2632 (La.2/20/09), 2 So.3d 425; In re: Williams, 06-2578 (La.2/2/07), 947 So.2d 710; In re: Poirrier, 01-1116, 01-1118 (La.6/29/01), 791 So.2d 94. Based on this jurisprudence, we will *1159 adopt the board’s recommendation and disbar respondent. We further order respondent to pay restitution to her clients and to refund all unearned fees.
InDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Keisha M. Jones-Joseph, Louisiana Bar Roll number 25736, be and she hereby is disbarred. Her name shall be stricken from the roll of attorneys and her license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make restitution to her victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent has been ineligible to practice since May 31, 2013 for failure to comply with the mandatory continuing legal education requirements. She is also ineligible for failure to pay her bar dues and the disciplinary assessment.

. Contrary to this allegation, the ODC introduced into the record a copy of a letter reflecting respondent’s reply to the complaint. The letter was not listed on the ODC’s exhibit list, although it was stamped as ODC Exhibit 33.

. Contrary to this allegation, the ODC submitted evidence that respondent provided a written response on December 29, 2009.

. ABA Standard 4.41 provides that disbarment is generally appropriate when (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.