PER CURIAM
*1000 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Raymond Charles Burkart III, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent under disciplinary board docket numbers 16-DB-006 and 17-DB-007. Respondent failed to answer either set of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3).
The matters were then considered by separate hearing committees. No formal hearings were held, but the parties were given an opportunity to file with the hearing committees written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee's consideration in either matter.
Following their consideration by the hearing committees, the matters were consolidated by order of the disciplinary board. The board then filed in this court a single recommendation of discipline encompassing both sets of formal charges.
FORMAL CHARGES
16-DB-006
Count I
On February 5, 2014, the ODC received notice from Chase Bank that a $431.83 check drawn on respondent's client trust account was returned unpaid for insufficient funds. The ODC then sent respondent a letter requesting an explanation for the returned check as well as copies of six months of bank records for the account; however, respondent did not comply with the request. As a result, a formal complaint was opened.
Notification of the formal complaint was mailed to respondent in June 2014, again requesting the previously sought information. The correspondence was returned unclaimed. One month later, the ODC resent the notification to respondent. Respondent signed for the notice on August 2, 2014, but he did not respond to the request.
In September 2014, the ODC requested that a subpoena and a subpoena duces tecum be served upon respondent for his sworn statement and for the production of his financial information. Respondent was served on September 16, 2014. The ODC finally received the requested information from respondent on September 24, 2014, although the response was dated March 14, 2014. As a result, the sworn statement was cancelled.
In his response, respondent apologized and expressed regret for writing an NSF check, which he stated was unintentional. (The check represented a refund to a client of unearned fees and unused costs.) Respondent indicated that he notified the *1001 client of the violation and wired the amount to his client on February 10, 2014.
Respondent also hired a CPA to audit his trust account. According to the CPA report, dated March 12, 2014, respondent's trust account had a negative balance of $3,721.71. By way of explanation for the shortfall, respondent stated that he had assumed responsibility for handling the client trust account after his law partner, who had previously handled administrative duties, removed her name from the account.[2] Respondent admitted that he never realized the responsibility entailed in handling the administrative aspects of the firm. Respondent stated that in 2013, his professional duties to the local police union lodge became overwhelming and he lost his law partner, for all practical purposes. Respondent stated that he planned to repay the shortfall in his trust account, although he has yet to confirm that he has complied with these plans.
In October 2014, the ODC's auditor asked respondent to identify numerous online transfers, cash withdrawals, and credit card payments from his trust account. Respondent failed to respond, and he was served with a subpoena duces tecum as well as a subpoena to appear for a sworn statement. On January 13, 2015, respondent appeared at the ODC for his sworn statement and produced additional copies of deposit and withdrawal slips, but the submitted information was not responsive to the ODC's request.
The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), and 8.4(a) (violation of the Rules of Professional Conduct).
Count II
In November 2010, Davina Witte hired respondent's firm to represent her in a divorce, paying the firm a $2,000 retainer. The last service provided was in July 2012. Between September 2014 and March 2015, Ms. Witte repeatedly asked respondent to return the unearned portion of the fee she had paid. After Ms. Witte threatened to file a disciplinary complaint, the firm's office assistant called Ms. Witte and informed her that she would be receiving a check. Thereafter, Ms. Witte continued to leave messages regarding the refund. In December 2014, respondent finally answered Ms. Witte's phone call, at which time he informed her that he would "look into the situation." Ms. Witte never heard anything further from respondent, even after she left several more messages.
In March 2015, Ms. Witte filed a complaint against respondent and his law partner with the ODC. In response to the complaint, respondent's law partner advised that Ms. Witte began calling her in October 2014 to inquire about the refund. Because she was unaware of any balance due to Ms. Witte, she instructed her assistant to forward the inquiry to respondent. She also e-mailed respondent to inquire about the status of the refund. In response, respondent advised that he would send the refund to Ms. Witte.
On April 30, 2015, the ODC received a letter from Ms. Witte, advising that she had finally received the remainder of her balance from respondent. On May 6, 2015, respondent responded to the complaint. In his response, respondent informed the ODC that the delay in returning the funds was due to a 2013 "computer crash," which resulted in the loss of Ms. Witte's contact *1002 information. Respondent admitted that after speaking with Ms. Witte in December 2014, he failed to investigate the issue in a timely manner.
The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4 (failure to communicate with a client), 1.15, 8.1(b), and 8.4(a).
Hearing Committee Report
After considering the ODC's deemed admitted submission, the hearing committee determined that the factual allegations in the formal charges were deemed admitted and proven by clear and convincing evidence. The committee also made the following additional findings of fact:
There is strong and overwhelming support for the allegations brought forth by the ODC. The ODC provided respondent with multiple opportunities to assist in the investigation of this disciplinary matter. For reasons unknown, respondent has been unresponsive and less than cooperative. The record clearly establishes respondent's failure to safeguard money entrusted to him for the benefit of his clients. Moreover, respondent has violated the duty owed to the legal profession by failing to cooperate with the ODC in its investigation of misconduct. These acts are not befitting of an individual engaged in the practice of law.
Based on these facts, the committee determined respondent violated Rules 1.4, 1.5(f)(5) (failure to refund an unearned fee), 1.15, 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(a) of the Rules of Professional Conduct.
After considering the ABA's Standards for Imposing Lawyer Sanctions , the committee determined that the applicable baseline sanction is suspension.
After further considering the ODC's argument and submission on the issue of an appropriate sanction, the committee recommended respondent be suspended from the practice of law for one year and one day.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
17-DB-007
Count I
In November 2013, Kelly Boyd hired respondent on a contingency fee basis to represent her in a personal injury matter. On June 1, 2015, Ms. Boyd terminated respondent's services and requested a copy of her file via certified mail. Respondent signed the delivery receipt for the written request, but he failed to return the file after numerous requests by Ms. Boyd and her new attorney.
In September 2015, Ms. Boyd filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.16(d) (obligations upon termination of the representation), 8.1(b), 8.1(c), and 8.4(a).
Count II
In July 2009, Blaine G. Austin, Sr. paid respondent a retainer fee to represent him in a civil matter. Thereafter, respondent failed to communicate with Mr. Austin. In 2014, Mr. Austin grew concerned over the delay in the litigation, and he requested a status update from respondent. At that time, respondent informed Mr. Austin that these cases "always settled." Respondent then stopped answering Mr. Austin's phone calls and text messages. In November 2014, Mr. Austin sent respondent a Facebook message stating that he intended to file a disciplinary complaint due to *1003 the lack of communication. Respondent acknowledged the message and promised to keep Mr. Austin informed, but there was still no communication. Respondent blocked Mr. Austin on Facebook, and Mr. Austin's texts and phone calls went unanswered. Mr. Austin sent respondent a message asking for the return of all unearned fees, but he has not complied with the request or provided Mr. Austin an accounting.
In March 2016, Mr. Austin filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4, 1.5, 8.1(c), and 8.4(a).
Count III
In December 2015, Samantha Houghton hired respondent to represent her in a child support matter. She paid respondent $500 to accept and start the case, but respondent failed to perform any legal work on her behalf.
In September 2016, Ms. Houghton filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 8.1(c), and 8.4(a).
Hearing Committee Report
After considering the ODC's deemed admitted submission, the hearing committee determined that the factual allegations in the formal charges were deemed admitted and proven by clear and convincing evidence. Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee determined respondent knowingly violated duties owed to his clients and the legal profession. His violations resulted in actual harm to clients, by depriving them of the use of funds they intended to pay for litigation and of material needed for litigation, and potentially resulted in loss of valid claims and defenses. His failure to accept the ODC's communications resulted in additional costs and delays in resolving the complaints, causing injury to the court and the legal profession. Based on the ABA's Standards for Imposing Lawyer Sanctions , the committee determined the applicable baseline sanction is disbarment.
The sole aggravating factor found by the committee is a pattern of misconduct. The committee added that respondent's "utter lack of response to these complaints and formal charges is greatly disturbing, whether it results from an unexplained inability to respond, a lack of interest in remaining a lawyer, or disrespect for this proceeding." The committee found that no mitigating factors are present.
Based on the foregoing, the committee recommended respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
Disciplinary Board Recommendation
16-DB-006 and 17-DB-007
After reviewing these consolidated matters, the disciplinary board determined that the factual allegations in the formal charges were deemed admitted and proven. The board also determined that the legal conclusions of the committees are supported by the factual allegations asserted in the formal charges and/or by the evidence submitted in support of the factual allegations. Based on these findings, the *1004 board concluded that respondent violated Rules 1.3, 1.4, 1.5, 1.15, 1.16, 8.1(b), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
The board determined respondent violated duties owed to his clients and the legal profession. His conduct was knowing and resulted in actual harm to his clients, whom he essentially abandoned. He neglected legal matters, refused to respond to requests for information, and failed to return files and unearned fees. He also took active steps to block communications from a client. His conduct caused potential harm to clients who may have lost valid claims or defenses. The record establishes that respondent improperly used or otherwise mismanaged his client trust account, but it does not establish that any client harm was sustained from that misconduct. However, his failure to cooperate with the ODC caused the unnecessary expenditure of limited resources of the disciplinary agency and delayed the resolution of complaints, all of which damage the reputation of the legal profession. Based on the ABA's Standards for Imposing Lawyer Sanctions , the board determined the applicable baseline sanction is disbarment.
The board found the following aggravating factors present: a pattern of misconduct, multiple offenses, and bad faith obstruction of the disciplinary proceeding by failing to comply with the rules and orders of the disciplinary agency. The board found that no mitigating factors are present.
After reviewing prior jurisprudence involving similar misconduct, the board recommended respondent be disbarred. The board also recommended respondent be required to pay full restitution to Mr. Austin and Ms. Houghton for any unearned fees, and that he be ordered to return all of Ms. Boyd's file materials to her. The board further recommended respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan , 01-3058 (La. 1/10/03), 838 So.2d 715.
The evidence in the record of this deemed admitted matter supports a finding that respondent neglected client matters, failed to communicate with his clients, failed to return unearned fees, failed to return client file materials, mishandled his client trust account, and failed to cooperate with the ODC in its investigations. This conduct amounts to a violation of Rules *1005 1.3, 1.4, 1.5, 1.15, 1.16, 8.1(b), 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
The record supports a finding that respondent knowingly, if not intentionally, violated duties owed to his clients and the legal profession, causing potential and actual harm. The aggravating and mitigating factors found by the disciplinary board are supported by the record. The baseline sanction for this type of misconduct is disbarment.
In recommending a sanction, the disciplinary board cited two cases addressing misconduct similar to the misconduct engaged in by respondent. We agree that these cases provide guidance here, and they indicate that disbarment is the appropriate sanction. In 2016, we disbarred an attorney for neglecting legal matters, failing to communicate with clients, failing to account for or refund unearned fees, failing to properly withdraw from a representation, engaging in dishonest conduct, and failing to cooperate with the ODC in its investigations. In re: Gilbert , 16-0044 (La. 3/4/16), 185 So.3d 734. In 2014, we disbarred an attorney for neglecting legal matters, failing to communicate with her clients, failing to refund unearned fees, and failing to cooperate with the ODC in its investigation. In re: Jones-Joseph , 14-0061 (La. 2/26/14), 134 So.3d 1153. Several aggravating factors were present in both of these cases, which like the instant case, were also deemed admitted.
After further considering the jurisprudence cited by the board, we will accept the board's recommendation and disbar respondent. We will further order respondent to (1) promptly return Kelly Boyd's file, (2) make full restitution of unearned fees, with legal interest, to Blaine G. Austin, Sr., and (3) make full restitution of unearned fees, with legal interest, to Samantha Houghton.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Raymond C. Burkart III, Louisiana Bar Roll number 30320, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall promptly return Kelly Boyd's file and shall refund unearned fees to his clients as set forth in this opinion. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

On June 3, 2016, respondent was declared ineligible to practice law in Louisiana for failure to comply with the mandatory continuing legal education requirements. He is also ineligible for failure to pay his bar dues and the disciplinary assessment and failure to file his trust account registration statement.

Respondent's law partner accepted a diversion for her role in this matter.